UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RUBY ELAINE ROBERTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:05-cv-0642-TAB-RLY |
| ) | |
| INDIANAPOLIS PUBLIC SCHOOLS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**[1]

**I.     Introduction.**

Plaintiff Ruby Elaine Robertson, an African-American custodian for Defendant Indianapolis Public Schools ("IPS"), claims that IPS discriminated against her because of her race and retaliated against her for complaining about the alleged discrimination. Specifically, Robertson claims that she was assigned less desirable tasks, called names, subjected to sexually charged rumors, transferred, and denied stress counseling in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000 *et seq*.[2] Robertson also claims that Defendant Vicki Blair is liable for intentional infliction of emotional distress and that Defendants negligently caused her emotional distress.

---

[1] This entry is a matter of public record and will be made available on the Court's web site. However, the Court does not consider the issues addressed in this entry sufficiently novel to justify commercial publication.

[2] Robertson originally alleged that supervisors Vicki Blair, Larry Adair, Gene Akers, and Richard Simmons violated Title VII. After Defendants pointed out in their summary judgment brief that these individuals are not "employers" for Title VII purposes, Robertson abandoned these claims. Thus, further discussion of this well-settled principle is unnecessary.

IPS asserts that Robertson cannot establish a prima facie case of discrimination, retaliation or hostile work environment, and that it had legitimate reasons for its work-related decisions. IPS requests that the Court enter summary judgment in its favor against Robertson's Title VII claims and decline to exercise supplemental jurisdiction over her state law claims. For the reasons set forth below, IPS's motion for summary judgment [Docket No. 34] is GRANTED.

## II.     Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Militello v. Central States, Se. and Sw. Areas Pension Fund,* 360 F.3d 681, 685 (7th Cir. 2004). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court construes all facts and draws all reasonable inferences in a light most favorable to the non-moving party. *Paz v. Wauconda Healthcare and Rehab. Ctr.*, 464 F.3d 659, 664 (7th Cir. 2006). "If [Robertson's] evidence is merely colorable or not significantly probative, then there is no genuine issue for trial and summary judgment is appropriate." *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 433 F.3d 1024, 1030 (7th Cir. 2006) (internal quotation and citation omitted).[3]

---

[3] The Court notes that IPS's September 28, 2006 reply was untimely pursuant to Local Rule 56.1(c) and Fed. R. Civ. P. 6, which in combination rendered IPS's reply due on September 26. Robertson prudently did not move to strike IPS's tardy reply or otherwise object. The Court likewise will overlook this insouciance though it does not go unnoticed.

**III.    Background.**[4]

In 2002, Robertson began working for IPS as a custodian. IPS assigned her to School No. 421, where she reported to head custodian Vickie Blair. [Robertson Dep. pp. 7-8.] Robertson's job duties included cleaning classrooms, restrooms, stairways, hallways, windows, mirrors, and removing trash. [Robertson Dep. p. 7.] Blair considered the abilities, experience, qualifications, and willingness of her custodians when making assignments. [Blair Aff. ¶ 23.] Blair assigned the African-American custodians their tasks before delegating assignments to the Caucasian custodians. Once the African-American custodians dispersed to perform their assigned tasks, Blair would assign the Caucasian custodians their tasks. [Robertson Dep. p. 10; Boyd Dep. p. 12.]

During the summer of 2004, only two other custodians -- Tracy Boyd and Dyricia Bacon -- shared equally low or lower seniority than Robertson at School No. 421. [Blair Aff. ¶ 5.] For all relevant times, Blair supervised only two Caucasian custodians; Kelly Hayes, who had over twelve years of seniority, and Russell Fouts, who had over twenty years of seniority. [Blair Aff. ¶ 8.]

Fouts was responsible for outdoor tasks such as keeping up the grounds, cutting grass, trimming hedges, weeding, and picking up trash. [Robertson Dep. pp. 10-12; Bacon Dep. p. 6; Boyd Dep. p. 41.] He also performed inside jobs no one else wanted to do. [Blair Aff. ¶ 20.] Hayes was assigned floor-scrubbing duties, along with African-Americans Lewis Oliver and

---

[4] The facts are either undisputed or viewed in a light most favorable to Robertson, the non-moving party. In addition, this background section is an overview of the facts, not an exhaustive recitation of all material facts.

Duane Duncan. Blair also waxed a lot of floors herself.[5] [Blair Aff. ¶ 12.] Robertson does not know what tasks Blair assigned the Caucasian custodians. [Robertson Dep. pp. 10-11.] Robertson, Boyd, and Bacon did not see Fouts or Hayes work. Instead, they observed them sitting on the dock with Blair smoking cigarettes.

Robertson first took issue with Blair during summer clean-up in 2004. [Robertson Dep. p. 13, Ex. A.] Robertson, Boyd, and Bacon believe that Blair assigned easier, less rigorous jobs to the custodians she liked, and that she reserved the more demanding jobs for the ones she didn't like. [Robertson Dep. Ex. D1; Boyd Dep. pp. 11-12; Bacon Dep. pp. 22-23.] Robertson's perception that Blair treated the African-American custodians unfairly prompted her to "bump heads" with Blair. [Boyd Dep. pp. 15-16.] Robertson also believes that Blair required her to repeat the same job assignments -- cleaning the walls and baseboards -- every day.[6] [Robertson Dep. p. 17.] Blair contends that she assigned job duties during the summer clean-up based upon each custodian's strengths and weaknesses. [Blair Aff. ¶ 9.]

Robertson also complained that Blair would criticize her and the others for leaving spots, and for doing a poor job. [Robertson Dep. pp. 22-23.] On at least two occasions, Blair determined that Robertson's work on a specific assignment was done poorly and had to be redone by other custodians. [Blair Aff. ¶¶ 11, 14.] Blair's criticism upset Robertson because Robertson believed they were about "stuff that's been there forever; there's nothing we can do

---

[5] Dyricia Bacon, an African-American on Robertson's crew, also waxed floors. [Blair Aff. ¶ 13.]

[6] Robertson's crew was not required to do any tasks during summer clean-up that they did not do during the regular school year. [Bacon Dep. pp. 26, 57.]

about it.  I mean, we can wipe and wipe, and it's not going anywhere.  And that's pretty much what she [Blair] was complaining about every day we went in." [Robertson Dep. p. 23.]

Robertson felt that Blair unreasonably stretched out summer clean-up, and she often called Blair's supervisor, Larry Adair, to complain.  [Robertson Dep. pp. 17-18.]  Robertson spoke to Adair a few times a week, to discuss the work assignments she was receiving from Blair and the way the summer clean-up was being conducted.  [Robertson Dep. pp. 17-18.]  She submitted at least six written complaints to Adair.  Robertson also submitted grievances to her union about work conditions and the discriminatory way she believed Blair assigned jobs.  [Robertson Dep. p. 20.]  Specifically, Robertson complained about the work that Blair assigned her during the summer clean-up, including cleaning the walls five days a week.

Once Robertson began complaining repeatedly about the assignments she received from Blair, her relationship with Blair deteriorated.  [Robertson Dep. p. 24.]  On one occasion, Blair called Robertson a "black whore" and accused her of sleeping with Larry Adair and Gene Akers.  [Robertson Dep. pp. 26-28.]  On several occasions that summer, Blair repeated her accusation that Robertson was sleeping with Adair and Akers.  [Robertson Dep. p. 29.]

Robertson filed her first union grievance against Blair on or about August 25, 2004.  [Blair Aff. ¶ 15.]  She filed this grievance approximately two weeks after Blair took pictures of a poor cleaning job performed by Robertson and her crew, which Blair sent to Richard Simmons at human resources.  [Blair Aff. ¶ 14, Exs. A-C.]  Robertson's grievance alleged "hostile working environment, spreading false rumors."  [Robertson Dep. Ex. A.]

Sometime after Robertson complained about Blair, Larry Adair, Gene Akers, and Blair met with the custodians at School No. 421.  [Bacon Dep. p. 20.]  Following that meeting, Akers

5

and Adair referred the matter to Simmons in human resources. [Robertson's Interrogatory Answer Nos. 8, 9.] Thereafter, Simmons and Lydia Harris from human resources conducted an investigation. [Robertson Dep. p. 40; Bacon Dep. p. 25.] Following the investigation, Simmons advised Robertson that he could not substantiate her allegations. [Robertson Dep. p. 58.]

Also in August 2004, Robertson requested that IPS send her to a doctor for stress. [Robertson Dep. p. 39.] Worker's compensation specialist Donna Bailey denied this request and informed Plaintiff that she had to see her own doctor.[7] [*Id*.] Bailey denied the request on the basis that IPS did not offer stress counseling to non-licensed personnel such as Robertson. [Bailey Aff. ¶ 10.] Nonetheless, Robertson was on modified duty for an unspecified work-related injury intermittently between August 18, 2004 and June 20, 2005. [Bailey Aff. ¶ 4.] During that time, Bailey was responsible for Robertson's placement. [Bailey Aff. ¶ 5.] While Robertson was on light duty, Bailey transferred Robertson four times due to supervisors' complaints concerning Robertson, including complaints that she brought a television to work and spent an excessive amount of time on her cell phone on personal calls.[8] [Bailey Aff. ¶¶ 4, 5, 9.] One transfer entailed a reassignment from a media center to the wood shop at the same school. [Bailey Aff. ¶ 6.] Bailey made this transfer after receiving a complaint regarding Robertson's work habits and a request for transfer from Robertson's media center supervisor. [*Id*.]

---

[7] Neither party provides a date certain or even information from which the Court may infer when Robertson made or when Bailey denied this request.

[8] Robertson disputes that she was transferred four times and that these transfers were spurred by supervisor complaints. However, she fails to designate any evidence to properly controvert these facts with admissible evidence as Rule 56 requires her to do.

**IV.   Discussion**.

    **A.   Title VII discrimination and retaliation claims.**

Title VII forbids an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race" or from retaliating for engaging in protected activity, such as complaining about discrimination. 42 U.S.C. § 2000 *et seq*. Employees who believe they have been discriminated against because of their race or retaliated against for engaging in protected activity have two evidentiary methods -- direct or indirect -- available to defeat a summary judgment motion. *Sylvester v. SOS Children's Villages Ill., Inc.,* 453 F.3d 900, 901-03 (7th Cir. 2006)*; Volovsek v. Wis. Dept. of Ag., Trade and Consumer Prot.*, 344 F.3d 688, 689 (7th Cir. 2003). Regardless of which evidentiary approach Robertson invokes, for her discrimination claim she must show that she suffered an adverse employment action; for her retaliation claim she must demonstrate an adverse action sufficient to dissuade a "reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2412-15 (2006). In either instance, the harm must be material. *Id*.

    **1.   Robertson's claimed adverse actions with respect to disparate treatment.**

As a threshold matter, a plaintiff must establish an adverse employment action to sustain liability against an employer under Title VII. To be sufficiently adverse for Title VII's discrimination provision, a complained of employment action must significantly affect the terms, conditions, or privileges of employment. *Rhodes v. Ill. Dept. Of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (adverse employment action not established by being required to wash a truck in cold weather or drive a truck without heat for a few days, being assigned to a different crew for three

days, being prohibited from driving or riding in the foreman's truck, suffering a change in a route, or being marked absent contrary to company policy). Robertson asserts that IPS discriminated against her on the basis of her race when her supervisor assigned her less desirable tasks than those assigned to Caucasian custodians, delegated her tasks outside the presence of the Caucasian custodians, called her a "black whore", stated that she slept with other supervisors, and criticized her work.

Robertson fails to demonstrate how these actions had any tangible effect on the terms, conditions or privileges of her employment. Instead, her list amounts to the type of boorish behavior, inconveniences, and unpleasantries that the Seventh Circuit has declined to embrace as materially adverse employment actions. *See, e.g.*, *Sublett v. John Wiley & Sons, Inc*., 463 F.3d 731, 739 (7th Cir. 2006) (reaffirming previous holding that negative performance evaluations alone do not constitute adverse job actions); *Walker v. Mueller Indus., Inc.,* 408 F.3d 328, 332 (7th Cir. 2005) (warnings about performance are not adverse employment actions); *McKenzie v. Milwaukee County*, 381 F.3d 619, 625 (7th Cir. 2004) (neither isolated offensive comments nor lateral transfer to an undesirable position without alteration to pay or benefits deemed sufficiently adverse); *Johnson v. Cambridge Indus., Inc*., 325 F.3d 892, 901 (7th Cir. 2003) (adverse employment action narrowly construed to exclude assignment to more difficult tasks, performing tasks alone when others were permitted to work as a group, and admonishment for not wearing goggles).

This conclusion should not be construed as an endorsement of Blair's alleged conduct. A supervisor's alleged use of the term "black whore" -- even on a single occasion as claimed in this case -- is not commensurate with any standard of workplace decorum. However, the Seventh

Circuit has unequivocally instructed that "Title VII is not a general code of workplace civility, nor does it mandate 'admirable behavior' from employees." *McKenzie*, 381 F.3d at 624 (internal citation omitted). Against this legal canvas, Robertson's allegations of what occurred during the 2004 summer clean-up do not rise to the level of a materially adverse employment action. Thus, Robertson's Title VII disparate treatment cause of action fails, and IPS is entitled to summary judgment in its favor on Robertson's discrimination claim.

**2.     Robertson's claimed adverse actions with respect to retaliation**.

The Supreme Court recently endorsed the Seventh Circuit's treatment of adverse actions with respect to Title VII's prohibition on retaliation, 42 U.S.C. § 2000e-3(a). *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *Wash. v. Ill. Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005). To successfully advance a retaliation claim, a plaintiff must demonstrate that the complained of action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.,* 126 S. Ct. at 2415. Thus, in the context of a retaliation claim, a plaintiff is not limited to only employment actions as are plaintiffs invoking Title VII's discrimination provision. *Id. See also, Szymanski v. County of Cook*, -- F.3d -- , 2006 WL 3346150 at * 2 (7th Cir. Nov. 20, 2006) ("In fact, retaliation claims can be pursued based on actions that go beyond workplace-related or employment-related retaliatory acts and harm.").

Robertson contends that IPS sent her to a less desirable work site and denied her request for stress counseling in retaliation for complaining about racial discrimination. [Docket No. 49,

p. 9.]⁹ Even assuming that these actions could dissuade a reasonable worker from making or supporting a charge of discrimination, the undisputed particulars of this case foreclose this possibility. The only facts in the record regarding Robertson's transfers are that these transfers were temporary, and that they occurred as a function of her work-related light duty, as well as supervisor complaints about her work performance during the same period. Robertson fails in her burden to come forth with evidence that these transfers were enduring, disruptive, or had any effect that would dissuade a reasonable employee from complaining about discrimination. With respect to her request for stress-related counseling, Robertson sought a benefit to which she was not normally entitled, since IPS did not offer stress counseling to non-licensed personnel like Robertson. [Bailey Aff. ¶ 10.]

Further, neither of these actions had any chilling effect on her propensity to submit complaints and union grievances or file her lawsuit. This undisputed fact cuts against any inference that her transfers or denial of stress counseling were materially adverse actions. Robertson began complaining about Blair sometime after June 2004. She filed her first grievance on August 25 and her EEOC charge on September 22. [Robertson Dep. Exs. A, B.] While still employed with IPS, she filed this lawsuit on May 2, 2005. Neither Robertson's transfers nor her denial of counseling deterred Robertson from taking further action, nor would these acts be expected to dissuade a reasonable person from doing so. *See, e.g.*, *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (employer's written reprimand deemed not an adverse action for purposes of retaliation provision where record lacked any evidence that such

---

⁹ Robertson's brief is not correctly paginated and page 9 of her response brief is incorrectly denoted page "8."

might deter a reasonable worker from complaining about discrimination). Thus, as a matter of law Robertson was not subjected to an adverse action that would dissuade a reasonable person from pursuing protected activity. Accordingly, IPS is entitled to summary judgment on her retaliation claim.

**3.     Robertson's discrimination and retaliation claims otherwise fall short.**

Even had Robertson successfully shown adverse actions, Robertson lacks the sort of evidence that would entitle her to proceed on her claims under the direct method or the indirect method. An employee trying to prove Title VII discrimination or retaliation via the direct method may do so with either direct evidence or circumstantial evidence. *Davis v. Con-way Transp. Cen. Ex. Inc.*, 368 F.3d 776, 786 (7th Cir. 2004). "Direct evidence is evidence, which, if believed by the finder of fact, 'will prove the particular fact in question without reliance upon inference or presumption.'" *Volovsek*, 344 F.3d at 688 (*citing Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997)). Direct evidence is tantamount to an admission by the decision maker that an employment action was taken for an improper reason. *Rudin v. Lincoln Land Comty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005) (*quoting Sheehan v Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1997)). Robertson proffers no such evidence.

"Circumstantial evidence. . . does not directly demonstrate discriminatory intent but supports an inference of such intent under the circumstances." *Walker v. Bd. of Regents of Univ. of Wis. Sys.*, 410 F.3d 387, 394 (7th Cir. 2005). None of Robertson's proffered evidence is circumstantially sufficient. *See, e.g., Paz v. Wauconda Healthcare and Rehab. Ctr., LLC,* 464 F.3d 659, 665 (whether through direct or circumstantial evidence, a plaintiff employing the

direct method must present sufficient evidence to allow a court to infer that the adverse action was because of an improper motive).

Robertson contends she has proffered sufficient circumstantial evidence to employ the direct method of proof for her discrimination claim. She directs the Court's attention to Blair's work assignments, method of making assignments, time spent smoking with the Caucasian custodians, and Blair's "black whore" statement. Yet, Robertson herself acknowledges that she does not know what tasks Blair assigned the Caucasian employees. [Robertson Dep. pp. 10-11.] IPS further points out that if Robertson witnessed Blair smoking on the dock, she likewise had to be on a break. [Docket No. 54, p. 2.] There is no evidence that Robertson was prohibited from fraternizing with Blair and the other two employees during such breaks. What remains of Robertson's allegations is too thin a record for the Court to conclude that sufficient circumstantial evidence of discrimination exists to allow Robertson to proceed directly in her claims against IPS. *Tri-Gen,* 433 F.3d at 1030.

Concerning her retaliation claim, Robertson cannot raise a triable issue under the direct method that she was transferred or denied stress counseling because she complained about discrimination. At the time IPS transferred Robertson, she was on light duty for a work-related injury. Donna Bailey -- who Robertson fails to show had any involvement in the events giving rise to her discrimination claims -- made the transfers. Bailey also denied Robertson's stress counseling. The record lacks any evidence that Bailey, as the decision maker, knew or had reason to know of any of Robertson's complaints regarding Blair or IPS. If Bailey did not know of Robertson's protected activity it is axiomatic that Bailey could not have acted because of

Robertson's engagement in protected activity. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004).

With respect to the indirect method of proof, Robertson's shortcoming is her failure to raise a triable issue regarding the similarly situated prong of her prima facie cases. In fact, IPS has produced unrebutted evidence that the only two comparators identified by Robertson -- Fouts and Hayes -- were not similarly situated to Robertson. Both Fouts and Hayes shared significantly greater longevity and experience in their positions. In fact, at the time Robertson was hired, Fouts had over twenty years and Hayes over twelve years of custodial experience. Moreover, Fouts had an entirely different job description that included outdoor tasks such as keeping up the grounds, cutting grass, trimming hedges, weeding, and picking up trash. *See, e.g., Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (similarly situated means directly comparable in all material respects). Consequently, the Court cannot conclude that either Fouts or Hayes are similarly situated to Robertson.[10] Therefore, Robertson's discrimination and retaliation claims falter, and IPS is entitled to summary judgment in its favor.

**B.     Racially hostile work environment.**

Racially tinged conduct that creates a hostile or abusive work environment, like sexual harassment, is actionable under Title VII. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473,

---

[10] Although not substantially addressed by either party, Robertson also failed to raise a genuine issue that IPS's reasons for its actions were a pretext for race discrimination or retaliation. *See Burks v. Wis. Dept. Of Transp.*, 464 F.3d 744, 754 (7th Cir. 2006) (reiterating that pretext is more than mistaken, ill considered or foolish and instead pretext means dishonest reason for action). Robertson makes no effort to show that IPS's reasons for any of the matters of which Robertson complains are lies. Without such evidence, Robertson cannot raise a triable issue of fact concerning the legitimacy of IPS's reasons for its actions, and her discrimination and retaliation claims cannot survive summary judgment.

476 (7th Cir. 2004). To avoid summary judgment, Robertson must raise a genuine issue that: (1) she was subjected to unwelcome harassment subjectively and objectively; (2) the harassment was based on her race; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability. *Id*. The harassment must be either so severe or pervasive that it alters the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

A court must assess whether a work place is sufficiently hostile from the totality of circumstances, and among the factors a court may consider are: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's ability to complete his or her assigned duties. *Dandy v. United Parcel Serv.*, 388 F.3d 263, 271 (7th Cir. 2004). In particularly egregious cases, a single incident may suffice.[11] *Cerros v. Steel Technologies*, 398 F.3d 944, 951 (7th Cir. 2005). But Title VII "does not guarantee a utopian workplace, or even a pleasant one." *Vore v. In. Bell Tel. Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994).

Turning to the totality of the circumstances here, Robertson's designation of evidence fails for several reasons. Foremost, the record demonstrates no pervasive or severe conduct. Robertson did not complain about any harassing conduct until the summer of 2004, and she does not contend that any harassing treatment extended beyond that summer. Robertson's complaints

---

[11] The Seventh Circuit instructs that such cases are rare, and "[i]n the typical case, it is a combination of severity and frequency that reaches the level of actionable harassment." *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006).

amount to a handful of incidents flowing from her acrimonious relationship with Blair.  Even when construed in a light most favorable to Robertson, her evidence cannot be considered pervasive.  *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (supervisor's comments at staff meetings over a two-month period of time not sufficiently pervasive).

Likewise Robertson cannot demonstrate that the complained of conduct was sufficiently severe.  The most egregious conduct cited by Robertson is that Blair, in front of Robertson's co-workers, called Robertson a "black whore" and stated that Robertson slept with male supervisors.  While such statements are offensive, they are not severe enough under controlling precedent to constitute an objectively hostile work environment.  *See, e.g., Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566-67 (7th Cir. 2004) (single instance where plaintiff heard supervisor call colleagues "black motherfuckers" did not rise to level of sufficiently severe for purposes of assessing whether supervisor's comment created hostile work environment); *Johnson v. Milwaukee Sch. of Eng'g.*, 258 F. Supp. 2d 896, 903 (7th Cir. 2003) (caucasian supervisor's statement that "black employees were supposed to work with their own kind" and references to these employees as "boys" were not severe enough to create a hostile work environment).

Moreover, Robertson does not present evidence of unambiguous racial slurs or epithets containing clear racial connotations.  *Cf. Cerros*, 398 F.3d at 950-51 (court found references to Hispanic plaintiff as "spic" and "wetback" were sufficiently severe).  In fact, none of the conduct complained of by Robertson invoked racial stereotypes or had any apparent racially pejorative purpose.  *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) ("The complained of conduct must have a . . . racial character or purpose to support a Title VII claim.").  The only racially charged piece of evidence at hand is Blair's single "black whore"

comment.  In the absence of epithets carrying racially inappropriate connotations or other more severe instances of harassment, Robertson's hostile work environment claim falls short, and IPS is entitled to summary judgment on this claim.

**V.	Conclusion.**

None of IPS's cited conduct rises to the level of a materially adverse job action because none significantly effected the terms, conditions, or privileges of her employment.  Nor would the allegedly retaliatory actions cited by Robertson dissuade a reasonable person from pursuing a claim of discrimination.  Even if they had, Robertson lacks sufficient evidence to prove discrimination directly, and she fails to raise any triable issues under the indirect method of proof.  Thus, Robertson's discrimination and retaliation claims fail.  Because the conduct complained of by Robertson is neither severe nor pervasive, her hostile work environment claim likewise collapses.  Accordingly, IPS is entitled to summary judgment.

For the reasons stated above, IPS's motion for summary judgment [Docket No. 34] is GRANTED with respect to Robertson's Title VII claims.  Robertson's supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  Final judgment shall be entered accordingly.  Each party shall bear their own costs.

Dated:  November 22, 2006

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Dana Childress-Jones
childressjones@aol.com

Caren L. Pollack
MANDEL POLLACK & HORN
cpollack@mplaw.net